# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

HOUGHTON MIFFLIN HARCOURT
PUBLISHING COMPANY,

        Plaintiff,

vs.

EDITORIAL ESFINGE, S de R.L. de C.V.,

        Defendant.

No. _____

## COMPLAINT

### Nature of the Action

1. Plaintiff, Houghton Mifflin Harcourt Publishing Company ("HMH"), brings this Complaint against Editorial Esfinge S de R.L. de C.V. ("Esfinge") for breach of contract, goods sold and delivered, and unjust enrichment, arising from Esfinge's failure to pay HMH for more than $3.38 million for books and publications it purchased from HMH.

### Parties

2. Plaintiff HMH publishes books and other educational materials. It is a corporation organized under the laws of Massachusetts with offices at 222 Berkeley Street, Boston, Massachusetts 02116.

3. Defendant Esfinge publishes, develops, and distributes books and other publications. It is a corporation organized under the laws of Mexico with offices at Esfuerzo No. 18-A, Colonia Industrial Atoto, Naucalpan, Estado de Mexico, C.P. 53519, Mexico.

**Jurisdiction and Venue**

4.  This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1332 because HMH is a resident of Massachusetts, Esfinge is a resident of a foreign state, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

5.  Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to the claim occurred in Massachusetts.  In addition, Esfinge has agreed that venue is proper in this court and has waived any objection to venue in this court.  See, Distribution Agreement, attached hereto and incorporated herein as Exhibit A, ¶ 12.

6.  Esfinge has consented to submit to the personal jurisdiction of the courts located in the Commonwealth of Massachusetts.  Id.

**Facts**

**Distribution Agreement**

7.  On or about December 1, 2011, HMH and Esfinge entered into a contract titled "Distribution Agreement."  Id.

8.  Pursuant to the Distribution Agreement,

  A.  HMH agreed to sell Esfinge "Publications," a term the agreement defines as: "print publications and related tangible materials packaged with a print publication that are components of the Programs, including any such publications published during the term of this Agreement. . . ."  Distribution Agreement, ¶ 1(b).

  B.  Esfinge agreed to serve as a distributor of HMH's Publications in Mexico. Id., ¶ 1(c).

9. Since 2011, Esfinge has ordered Publications from HMH under the Distribution Agreement for distribution in Mexico, and HMH has caused those Publications to be delivered to Esfinge.

10. Pursuant to the Distribution Agreement, Esfinge agreed to pay for Publications ordered under the following terms:

> [P]ayment for the Publications shall be made by Distributor to HMH in U.S. no later than the earlier of (i) 270 days from the date of invoice or (ii) November 30 of the calendar year in which the order is placed, except that payment for orders placed in the month of December shall be made within 120 days from the date of invoice.

Distribution Agreement, ¶ 4.4.

11. Esfinge made payments for the Publications to HMH's deposit account at a bank in Massachusetts for a period of time.

12. Beginning in October 2013, Esfinge failed to make payments for Publications ordered within the time period provided in the Distribution Agreement.

13. Between October 2013 and February 2014, HMH made repeated demands for payment from Esfinge.

14. Since October 2013, Esfinge has failed to make any payments to HMH, despite its repeated promises to pay.

**Termination of the Distribution Agreement**

15. On February 18, 2014, HMH sent a letter to Esfinge terminating the Distribution Agreement, for cause, because Esfinge had not made the payments when due under the Distribution Agreement. A true and accurate copy of this Termination Letter (the "Termination Letter") is attached hereto as Exhibit B.

16. At the time HMH sent the Termination Letter, Esfinge owed HMH $3,382,474.55. *Id.*

17. Pursuant to the Distribution Agreement and the Letter, Esfinge had thirty (30) days to cure the breach and become current. Ex. A, Distribution Agreement, ¶ 6.1.

18. During that thirty day period, Esfinge informed HMH that it would not pay $3,382,474.55.

19. By letter dated July 29, 2014, from HMH to Esfinge, HMH confirmed that Esfinge had not cured the breach arising from non-payment within the thirty day cure period. A true and accurate copy of that letter is attached hereto as Exhibit C. HMH served the letter on two different addresses by facsimile and registered overnight mail. Id.

## COUNT I
## (BREACH OF CONTRACT)

20. HMH incorporates by reference the allegations of paragraphs 1 through 19 as if restated herein.

21. The Distribution Agreement is a contract to which HMH and Esfinge are parties.

22. HMH sold Publications to Esfinge and otherwise performed all of its obligations under the Distribution Agreement.

23. Esfinge purchased Publications from HMH pursuant to the Distribution Agreement, but refused to make the payments as required by paragraph 4.4 thereof.

24. Esfinge's failure to make the payments required under the Distribution Agreement constitutes a material breach of the Distribution Agreement.

25. As a result of Esfinge's breach, HMH has been damaged in the amount of $3,382,474.55.

WHEREFORE, HMH requests the relief set forth below:

## COUNT II
## (UNJUST ENRICHMENT)

26. HMH incorporates by reference the allegations of paragraphs 1 through 25 as if restated herein.

27. As a result of Esfinge's purchase of Publications from HMH, the delivery of Publications to Esfinge, and Esfinge's failure to pay for those Publications, Esfinge has been unjustly enriched at the expense of, and to the detriment of, HMH.

28. At all times, HMH intended and expected to be paid for the Publications it sold to Esfinge.

29. Esfinge knew it was receiving benefits from the Publications yet retained those benefits at the expense of HMH.

30. The value of the Publications supplied by HMH for the direct benefit of Esfinge was $3,382,474.55.

31. Despite demand for payment, Esfinge has failed to pay HMH the principal sum of $3,382,474.55, the value of the Publications.

32. Esfinge has unjustly enriched itself at the expense and detriment of HMH by failing and refusing to pay for the benefit of the Publications it received from HMH.

WHEREFORE, HMH requests the relief set forth below:

## COUNT III
## (GOODS SOLD AND DELIVERED)

33. HMH incorporates by reference the allegations of paragraphs 1 through 32 as if restated herein.

34. Esfinge purchased the Publications from HMH beginning in January 2013.

35. HMH sold and delivered all Publications Esfinge purchased.

36. Esfinge has failed to pay HMH for the Publications it purchased and received from HMH.

37. Esfinge accepted the Publications from HMH.

38. Esfinge owes HMH the sum of $3,382,474.55 for these Publications.

WHEREFORE, HMH requests the relief set forth below:

### Requests For Relief

WHEREFORE, HMH respectfully requests that this Court enter Judgment in favor of HMH against Esfinge as follows:

A. On Count I, enter judgment in HMH's favor in the amount of $3,382,474.55, plus interest thereon.

B. On Count II, enter judgment in HMH's favor in the amount of $3,382,474.55, plus interest thereon.

C. On Count III, enter judgment in HMH's favor in the amount of $3,382,474.55, plus interest thereon.

D. On all Counts, award HMH its reasonable attorneys' fees and costs.

E. On all counts enter such further relief in favor of HMH as the Court deems just.

Dated: March 4, 2015

/s/ Thomas O. Bean
Thomas O. Bean, BBO No. 548072
Sara E. Hirshon, BBO No. 662202
Attorneys for HOUGHTON MIFFLIN
HARCOURT PUBLISHING COMPANY
VERRILL DANA, LLP
One Boston Place, Suite 1600
Boston, MA 02108
shirshon@verrilldana.com
tbean@verrilldana.com
Office: (617) 309-2600
Fax: (617) 309-2601